**SO ORDERED.**

**SIGNED this 5 day of January, 2015.**



_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:                                                            CASE NO. 10-05397-8-DMW

LEE E. EVANS
KIMBERLY K. EVANS
                                                                  CHAPTER 13
             DEBTORS

### ORDER ALLOWING TRUSTEE'S MOTION TO MODIFY PLAN

This matter comes on to be heard upon the Motion to Modify Plan ("Motion") filed by the Chapter 13 trustee, John F. Logan, Esq. ("Trustee"), and the response filed by Lee E. Evans ("Mr. Evans"). The court conducted a hearing in Raleigh, North Carolina on October 1, 2014. Cort I. Walker, Esq. appeared on behalf of Mr. Evans, and Michael B. Burnett, Esq. appeared on behalf of the Trustee. Based upon the evidence presented and the arguments of counsel, the court makes the following findings of fact and conclusions of law:

A.    BACKGROUND

1.    The Debtors filed a joint petition for relief under Chapter 13 of the United States Bankruptcy Code on July 7, 2010 ("Petition Date").

2. Around 1993, Mr. Evans and his wife, Kimberly K. Evans ("Ms. Evans"), purchased a RE/MAX real estate franchise ("Agency"). Ms. Evans served as the broker-in-charge, a designation required by the North Carolina Real Estate Commission, and Mr. Evans did home repairs for the Agency.

3. Mr. and Ms. Evans (collectively "Debtors") purchased two life insurance policies in July, 1995. According to Mr. Evans, the Debtors applied for the life insurance policies because they had children and wanted to be prepared for the future. According to Mr. Evans' bankruptcy schedules, the Debtors paid $281.00 per month in life insurance premiums for the two policies.

4. In 1999, Ms. Evans suffered severe intestinal and stomach problems. Due to her extensive medical problems, she was no longer able to work at the Agency full-time. Ms. Evans ceased drawing a salary around 2006 but continued assisting at the Agency.

5. Treatment for Ms. Evans' intestinal and stomach problems led to the discovery and diagnosis of aggressive metastatic breast cancer around 2007. Ms. Evans underwent treatment for the cancer, including chemotherapy, radiation, and surgery. Following the diagnosis, the Debtors closed the Agency and generated no income in 2008 and 2009.

6. Mr. Evans testified that on the Petition Date, Ms. Evans was between cancer treatments, and none of her physicians had given Ms. Evans any estimate regarding her life expectancy. In the year of the petition, Ms. Evans worked from home part-time, assisting Mr. Evans with his home repair business.

7. The Trustee conducted the Meeting of Creditors required by 11 U.S.C. § 341 on August 2, 2010, at which the Debtors stated that Ms. Evans was "disabled" but did not elaborate.

8. The court confirmed the Debtors' Chapter 13 plan ("Plan") on December 20, 2010 ("Confirmation Date"). Allowed general unsecured claims in this case total $110,265.36, and the Plan, as originally confirmed, provided for a 1% dividend to that class.

9. Almost a year after Plan confirmation, one of Ms. Evans' doctors told her that she had approximately two years to live.[1]

10. The Plan was modified by a Consent Order on April 19, 2013 to accommodate a mortgage modification with HSBC Mortgage Services, N.A. The modified Plan requires the Debtors to pay a total Plan base of $121,834.00. The modification resulted in an increase in the projected dividend to unsecured creditors, from 1% to 2.3%. There is no record suggesting that in the process of negotiating a Plan modification, the Debtors informed the Trustee of Ms. Evans' health prognosis.

11. Ms. Evans died on April 23, 2014. On May 7, 2014, Mr. Evans filed a Notice ("Notice") with the court stating that Mr. Evans was a beneficiary under Ms. Evans' life insurance policy and was entitled to receive a death benefit. The Notice further stated that Ms. Evans' death and the corresponding insurance payout were anticipated by Mr. Evans. The gross value of the insurance payout was $200,000.00.[2] After payment of a policy loan and funeral home expenses, the net benefit paid to Mr. Evans was $169,796.29.[3]

12. The Trustee's Motion was met with Mr. Evans' response ("Response") on August 22, 2014. The Trustee seeks modification of the Plan which would require Mr. Evans to pay a lump sum sufficient to pay in full the allowed unsecured debts that are either joint debts or in his

---

[1] Mr. Evans testified he did not know the exact date the doctor informed Ms. Evans that she had two years to live; however, Mr. Evans testified that she lived approximately two and a half years after the doctor's statement.

[2] The Notice stated that Mr. Evans was entitled to receive a $180,000.00 death benefit; however, at the hearing counsel for Mr. Evans submitted as Exhibit 4 a document that showed a $200,000.00 value.

[3] Mr. Evans paid an additional $4,798.26 to Montlawn Cemetery with the insurance proceeds, reducing the net payout after funeral expenses to $164,998.03.

name only.[4] By paying those claims in full, the Trustee calculates that the allowed unsecured debts that are in Ms. Evans' name only will receive a 4.7% dividend, up from the 2.3% dividend projected under the current Plan.

B. JURISDICTION

1. This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334.

2. The court has the authority to hear this matter pursuant to the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

C. DISCUSSION

1. Property of the Estate

a. Sections 541 and 1306 of the United States Bankruptcy Code ("Code") define "property of the estate." 11 U.S.C. § 541; 11 U.S.C. § 1306(a). These two provisions work together to create an inclusive, fluid, and comprehensive definition. *Carroll v. Logan*, 735 F.3d 147, 150 (4th Cir. 2013).

b. Section 541 identifies, in general terms, property of the bankruptcy estate while Section 1306 expands the Section 541 definition specifically for Chapter 13 cases. *Id.*

c. In *Carroll*, the United States Court of Appeals for the Fourth Circuit, affirming a decision from the Eastern District of North Carolina, held that an inheritance received by a debtor is property of the bankruptcy estate under Section 1306(a), if

---

[4] The Trustee does not assert that Ms. Evans' debts should be paid with the proceeds, because pursuant to Article X, Section 5 of the North Carolina Constitution, "[a] person may insure his or her own life for the sole use and benefit of his or her spouse or children or both, and upon his or her death the proceeds from the insurance shall be paid to or for the benefit of the spouse or children or both, or to a guardian, free from all claims of the representatives or creditors of the insured or his or her estate." N.C. Const. art. X, § 5.

received before the case is closed, dismissed, or converted. *Carroll*, 735 F.3d at 152*; see also In re Zeitchik*, 2011 Bankr. LEXIS 4588 (Bankr. E.D.N.C. Sept. 23, 2011).

    d.    This decision is consistent with the view shared by most courts that "'[w]hen a [Chapter 13] debtor's financial fortunes improve, the creditors should share some of the wealth.'" *Carroll*, 735 F.3d at 151 (citing *In re Arnold*, 869 F.2d 240, 243 (4th Cir. 1989)).[5]

    e.    *Carroll* and *Arnold* are controlling precedent, and the insurance proceeds are part of the bankruptcy estate. Even if it were disputed that life insurance proceeds are property of the estate, proceeds received before a Chapter 13 case is closed, dismissed or converted should qualify as property of the estate under § 1306(a) for the same reasons the debtors' inheritance was found to be property of the estate in *Carroll*.[6] *See In re Guentert*, 206 B.R. 958, 962 (Bankr. W.D. Mo. 1997) (holding life insurance proceeds are property of a Chapter 13 bankruptcy estate under § 1306).

2. Modification Justification

    a.    Section 1329 of the Code states that "[a]t any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of . . . the *trustee*, . . . to increase . . . the amount of payments on claims of a particular class provided for by the plan." 11 U.S.C. § 1329(a)(1) (emphasis added).

---

[5] It is important to note that *Carroll* left undisturbed the requirements of "substantial change" and "unanticipated change," as discussed below and created in *Arnold*.

[6] *Carroll* dealt with whether § 1306(a) renders an inheritance, which would normally be excluded from the estate under § 541(a)(5)(A) if received over 180 days after the petition date, as property of the estate, so long as it is received before the case is closed, dismissed, or converted. Proceeds received by a debtor as beneficiary of a life insurance policy or death benefit plan are addressed in § 541(a)(5)(C) rather than (a)(5)(A), but this difference does not affect the applicability of *Carroll* to the case at hand.

5

  b. While § 1329(a) does not specify what justifies a modification, a *substantial change* in a debtor's financial status may justify a change in the amount of payments. *Arnold*, 869 F.2d at 241 (emphasis added) (citing *Education Assistance Corp. v. Zellner*, 827 F.2d 1222, 1226 (8th Cir. 1987)).

  c. "[W]hen a bankruptcy court is faced with a motion for modification pursuant to §§ 1329(a)(1) or (a)(2), the bankruptcy court must first determine if the debtor experienced a substantial *and* unanticipated change in his post-confirmation financial condition." *Murphy v. O'Donnell (In re Murphy)*, 474 F.3d 143, 150 (4th Cir. 2007) (emphasis added) (citing *Arnold*, 869 F.2d at 243).

  d. That determination is necessary because *res judicata* "prevents modification of a confirmed plan pursuant to §§ 1329(a)(1) or (a)(2) unless the party seeking modification demonstrates that the debtor experienced a 'substantial' and 'unanticipated' post-confirmation change in his financial condition." *Murphy*, 474 F.3d at 149 (citing *Arnold*, 869 F.2d at 243).

3. <u>Substantial Change</u>

  a. In *Arnold*, the debtor experienced an increase in income after the Chapter 13 plan was originally confirmed but before the plan was completed. *Arnold*, 869 F.2d at 241. The Debtor's annual income increased from $80,000.00 per year, as projected at the time of confirmation, to $199,000.00 per year. *Id.* The court held that this increase of nearly $120,000.00 per year was undoubtedly a substantial increase. *Id.* at 242. The debtor's original plan in *Arnold* paid the debtor's unsecured creditors only 20% of their claims, and the trustee's modification allowed for a higher dividend to those creditors. *Id.* at 241.

6

      b.    Likewise, in *In re Ormiston*, 501 B.R. 303, 305-06 (Bankr. E.D.N.C. 2013), the debtors became entitled to receive an inheritance with a value between $25,000.00 and $40,000.00, and their confirmed plan provided for paying the unsecured creditors a 0.5% dividend. The court held the inheritance, which was between 800% and 1,500% of the amount of the confirmed plan base, was a substantial change in the debtors' financial situation. *Id.* at 310.

      c.    In this case, Mr. Evans received a net life insurance distribution of $169,796.29 while the Plan pays only 2.3% to the unsecured creditors. Under the Trustee's proposed modification, allowed unsecured claims in Mr. Evans' name and in the Debtor's joint names will be paid in full. Mr. Evans' receipt of $169,796.29 qualifies as a substantial change under § 1329(a)(1) and counts toward a change in favor of an increased contribution to the Plan.

4.  <u>Unanticipated Change</u>

      a.    In *Arnold*, the court adopted an objective test, applied in *In re Fitak*, 92 Bankr. 243, 250 (Bankr. S.D. Ohio 1988), to determine if a change was unanticipated. 869 F.2d at 243. *Fitak* asks "whether a debtor's altered financial circumstance could have been *reasonably anticipated* at the time of confirmation by the parties seeking modification." 92 Bankr. at 250 (emphasis in original); *see also Murphy*, 474 F.3d at 149 ("A change is unanticipated if the debtor's present financial condition could not have been reasonably anticipated at the time the plan was confirmed.").

      b.    Applying the standard set forth in *Fitak*, the court must address whether the death of Ms. Evans, and the subsequent life insurance payout, reasonably could have

7

been anticipated by the Trustee (the party seeking modification), at the time of confirmation (or modification).

    c.    In the Response, Mr. Evans states that Ms. Evans "had been seriously ill prior to the filing of the case and confirmation of the plan. Her death within the duration of the plan was anticipated." While certainly sad, that testimony would be far more credible if the statement had been made at the Meeting of Creditors or stated in the Plan. The choice of a Chapter 13 Plan with a 60 month term is inconsistent with Mr. Evans' statement. If the death were that imminent, the Debtors would have specifically disclosed the anticipated time-frame in the Plan or maybe elected to file under Chapter 7.

    d.    Prior to the Confirmation Date, Ms. Evans was ill with intestinal problems for eleven years and had been diagnosed with cancer for at least three years. Up to that point, no doctor or health professional had given Ms. Evans any sort of estimation of her life expectancy. It was not until late 2011 that Ms. Evans was given an estimated two years to live. Simply put, on the Confirmation Date, no individual involved in this case, especially the Trustee (party seeking modification), had any reason to expect Ms. Evans would not survive beyond the Plan's commitment period.

    e.    Ms. Evans was never told *prior* to confirmation that she would likely die during the duration of the Plan; therefore, the receipt of the life insurance proceeds during the duration of the Plan could not have been anticipated, at least to the extent needed to exclude the proceeds from the bankruptcy estate.

5. <u>Trustee's Duty</u>

    a.    The trustee in a Chapter 13 case has many duties outlined in 11 U.S.C. § 1302. For instance, a trustee shall "investigate the acts, conduct, assets, liabilities, and

financial condition of the debtor"[7] and "if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper."[8]  These, like the other duties of a Chapter 13 trustee, relate to inquiring into the financial status of the estate and not the personal health of a debtor.

      b.     Mr. Evans argues in the Response that the Trustee was "sufficiently noticed in the record and . . . could have raised the life insurance proceeds issue in the confirmation process."  In other words, the Trustee should have known Ms. Evans was terminally ill from the information on the record.  That assertion is not credible.  Even if the Trustee had asked Ms. Evans, prior to confirmation, if any medical professional had told her that she was likely to die during the life of the Plan, she would have answered "no."[9]

      c.     The Debtors' Schedule F lists fifteen unsecured creditors, seven of whom are medical providers.  Mr. Evans argues the Trustee should have examined these creditors and discovered Ms. Evans was terminally ill.  That expectation is far outside the scope of the normal duties of a Chapter 13 trustee.  The Trustee does have an explicit duty to examine any proofs of claims filed.  Only one proof of claim related to health care was filed in this case.  That one single claim was generally listed as "Services Performed" by WakeMed in the amount of $469.69.  Even if HIPAA[10] allowed for the release of that information, the expectation that the Trustee review those records and conclude that Ms. Evans was terminally ill is unreasonable and borderline ridiculous.

---

[7] 11 U.S.C. § 1106(a)(3).
[8] 11 U.S.C. § 704(a)(5) (applicable to a Chapter 13 trustee pursuant to 11 U.S.C. § 1106(a)(1)).
[9] She was not given her expiration prognosis until after the Confirmation Date.
[10] Health Insurance Portability and Accountability Act; Pub. L. No. 104-191, 110 Stat, 1936 (1996).

6. <u>Equity</u>

    a.    Mr. Evans argues that equity dictates that the life insurance proceeds should be excluded from the estate because of the emotional and economic impact of Ms. Evans' illness and death upon Mr. Evans. Excluding the life insurance from the estate runs counter to the purpose of life insurance, especially when the beneficiary is a Chapter 13 debtor.

    b.    The life insurance in this case is doing exactly what it is designed to do. It provided a vehicle for borrowing money from the cash value, as evidenced by the loan repayment from the gross proceeds, and for paying funeral expenses. It allows for the payment of debts incurred as a result of the illness, as evidenced by the contribution to the Plan. Finally, it allows for the survivors to move forward with their lives, as evidenced by a confirmed Plan and a probable discharge. The inclusion of the life insurance proceeds as an estate asset is in the best interest of all parties; now therefore,

It is ORDERED, ADJUDGED and DECREED that the Trustee's Motion to Modify Chapter 13 Plan is granted.

END OF DOCUMENT